UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHELLE SURRENCY, Individually, and
MICHELLE SURRENCY as Administrator of the Goods,
Chattels and Credits of M.G., deceased
and as Parent and Natural Guardian of T.G.,

                                **COMPLAINT**

                Plaintiff,

    -against-                        Civil Action No.: 1:22-CV-0391 (MAD/DJS)

CHRISTOPHER G. BALDNER,              (Jury Trial Demanded)

                Defendant.

## JURY TRIAL DEMANDED PURSUANT TO RULE 38(b)
## OF THE FEDERAL RULES OF CIVIL PROCEDURE

### COMPLAINT

The Plaintiff, by and through her attorneys, Cory Ross Dalmata, Esq., of DeLorenzo, Grasso & Dalmata, LLP, and Sanford Rubenstein, Esq. of Rubenstein & Rynecki, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1.      This is an action to recover damages for violations of plaintiffs civil rights guaranteed under the Fourth, Fifth, Eighth and Fourteenth Amendment to the United States Constitution and under the Constitution of the State of New York, 42 U.S.C. §§ 1983 and 1988. This is also an action for negligence, recklessness, assault, intentional infliction of emotional distress under, wrongful death and substantive due process rights under Federal and State law.

2.      The incident giving rise the claims herein occurred on or about the evening of December 22, 2020 on Interstate 87 northbound in the Town of Ulster, County of Ulster, State of New York, near exit 19 when New York State Trooper, Christopher G. Baldner, with the intent

to harm and in conscious disregard of the risk of serious injury or death, recklessly discharged a chemical agent in the cabin of a vehicle owned by April M. Hanna (aka April Goods), and operated by Tristin G. Goods, in which the two infant plaintiffs, M.G. (age 11) and T.G. (age 12) were both passengers in the back seat. Following his discharge of a chemical agent, believed to be pepper spray, into the vehicle Trooper Baldner then engaged in a deliberate and reckless chase in pursuit of the vehicle. During the high speed pursuit Trooper Baldner intentionally rammed the vehicle being operated by Tristin Goods multiple times at speeds that exceeded 100 miles per hour, ultimately causing defendant Tristin Goods to lose control of the vehicle, the vehicle to overturn and crash and both infant plaintiffs, M.G. and T.G. to sustain serious and permanent injuries and fatal injuries for the infant plaintiff M.G. Plaintiff, T.G. was in the zone of danger of bodily harm and was contemporaneously aware of the death of her sister, M.G., as a result of the defendant's action.

3.       As discussed more fully below the Defendant's reckless and wanton conduct in exercising deadly force during a high speed pursuit of a vehicle where: he knew the vehicle to be occupied by minor children; and he knew the driver and registered owner of the vehicle, which he had stopped for a traffic infraction, violated the plaintiffs' rights under the United States and New York State Constitutions, and gave rise to State law causes of action for intentional and/or negligent infliction of emotional distress, wrongful death, assault and battery.

4.       As a result, Plaintiffs seek compensatory and punitive damages as set forth below.

## JURISDICTION AND VENUE

5.       This Court has subject matter jurisdiction is pursuant to 28 U.S.C.§§ 1331, 1343(3), and (4) as the claims in this matter arise under questions of Federal law for violations of the plaintiffs' rights.

6.      This action arises under Federal Law, 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

7.      This Court has supplemental jurisdiction to hear and decide all claims arising under state law pursuant to 28 U.S.C. § 1367.

8.      The venue is proper within the United State District Court for the Northern District of New York in that the he wrongful acts complained of herein occurred in the Northern District of New York.

9.      Plaintiffs demand a trial by jury on each and every one of the claims in the Complaint.

**PARTIES**

10.     The plaintiff, Michelle Surrency, was at all relevant times a citizen of the United States of America and a resident of the State of New York, County of Kings.

11.     The decedent, M.G., was an infant and at all relevant times a citizen of the United States of America and a resident of the State of New York, County of Kings

12.     Plaintiff, Michelle Surrency was the parent and natural guardian of the infant plaintiff, M.G.  Plaintiff, Michelle Surrency is the administrator of the Estate of M.G., deceased. On the 15th day of February, 2022, the plaintiff, Michelle Surrency, was duly appointed by the Surrogate's Court of the County of Kings, Administrator of the Goods, Chattels and Credits of M.G., deceased, and said plaintiff has ever since been, and continues to be, said Administrator.

13.     The plaintiff, T.G., is an infant and was at all relevant times a citizen of the United States of America and a resident of the State of New York, County of Kings.

14.     Plaintiff, Michelle Surrency, is the parent and natural guardian of the infant T.G.

15.     As such, plaintiff, Michelle Surrency, has filed suit in her individual capacity, as Administrator of M.G's Estate and as parent and natural guardian of the infant T.G.

16.     Defendant, Christopher G. Baldner, was at all relevant times a resident of the State of New York, County of Greene and a New York State Trooper employed by the State of New York.

17.     The defendant, Christopher G. Baldner is being sued in his individual capacity.

## FACTUAL STATEMENT

18.     On or about December 22, 2020, decedent M.G. and plaintiff T.G. were lawful passengers in a 2017 Dodge vehicle being operated by their father, Tristin Goods and owned by April Hanna, which was travelling northbound on Interstate 87, the New York State Thruway, in the area of Exit 19 in the Town of Ulster, County of Ulster, State of New York.

19.     At that same date time and location Defendant, Christopher G. Baldner ("Trooper Baldner," hereinafter) was employed by the New York State Police as a Trooper and was operating a New York State Police vehicle wearing a New York State Police Uniform and displaying a badge of authority.

20.     All actions of Trooper Baldner herein described were performed under color and pretense of state law, constitute state action and were performed in the scope of his employment as a New York State Trooper.

21.     Shortly before 11:44 p.m., Trooper Baldner used his New York State Police cruiser's lights to initiate a traffic stop of the vehicle driven by Tristin Goods.

22.     Tristin Goods submitted to Trooper Baldner's demonstration of authority by stopping the vehicle in which the decedent, M.G. and infant plaintiff T.G. were passengers in.

23.     Upon information and belief Trooper Balder advised Tristin Goods that he had stopped the vehicle for exceeding the speed limit and did not advise Tristin Goods of any reason for the stop beyond the alleged speed.

24.     Upon information and belief a roadside electronic search or inquiry by Trooper Baldner would have confirmed that Tristin Goods was not the subject of any arrest warrant, had not been convicted of any crime previously, and had no reason to believe that there was any criminality afoot.

25.     Upon information and belief during the discussion between Trooper Baldner and Tristin Goods, Trooper Baldner displayed an aggressive demeanor, berating Tristin Goods, raising his voice, and using profane language and when Tristin Goods requested that Trooper Baldner summon a supervisor to the scene, Trooper Baldner instead escalated the interaction by raising his voice further and continuing to use profane language.

26.     Trooper Baldner then intentionally deployed a chemical agent believed to be pepper spray into the cabin of the vehicle occupied by infant decedent M.G. and infant T.G. causing physical injury and trauma.

27.     From the time that Trooper Baldner initiated the traffic stop until Tristin Goods began to drive away neither Tristin Goods, the two children or the other passenger, April Hanna (aka April Goods) did anything to threaten Trooper Baldner's safety.

28.     Following the discharge of the chemical agent into the cabin of the vehicle Tristin Goods then drove away from Trooper Baldner and proceeded north on Interstate 87.  Trooper Baldner pursued the vehicle knowing and fully aware that the vehicle contained two minor children, the infant decedent M.G. (age 11) and infant T.G. (age 12).

29.    Upon information and belief as Trooper Baldner pursued Tristin Goods vehicle his New York State Police Cruiser reached speeds of more than 130 miles per hour.

30.    As a result of his professional training and experience, Trooper Baldner knew that pursuing and ramming Tristin Goods' vehicle at high speed would endanger the two infant children in the vehicle, himself, and others in the community.

31.    At all times mentioned herein, Trooper Baldner was aware by virtue of his extensive New York State Police training and his agency's written pursuit policy, specifically New York State Police Manual Art. 30E2, and de facto policy, that he had a duty to drive in a manner exercising reasonable care for his safety and that of all other persons within the pursuit area, including infant decedent M.G. and infant T.G.

32.    At all times mentioned herein, Trooper Baldner was aware by virtue of his New York State Police training and his agency's written pursuit policy that he had a duty to terminate the pursuit when it became apparent that the immediacy of apprehension was clearly outweighed by the unreasonable danger to the public posed by continuing the pursuit.

33.    At all times mentioned herein, Trooper Baldner was aware that he was absolutely forbidden by New York State Police written and de facto pursuit policy from striking and/or initiating physical contact with the pursued vehicle without permission from his superior officer and/or the Sergeant on duty at the time of this event.

34.    Trooper Baldner intentionally used his cruiser as a weapon by ramming the rear of the vehicle driven by Tristin Goods twice, a maneuver prohibited by New York State Police policy under any circumstances.

35.    Approximately nine seconds later and 7/10 of a mile farther north, at or near mile marker 93, Trooper Baldner then intentionally used his vehicle as weapon again by causing his

cruiser to ram Plaintiffs' vehicle a second time, again at a speed that exceeded 100 miles per hour.

36.     In the instant before the second impact, Trooper Baldner caused his vehicle to accelerate sharply, ensuring the violent collision that followed.

37.     When Trooper Baldner rammed the vehicle operated by Tristin Goods the second time, Trooper Baldner was performing "Vehicle Contact Action" within the meaning of New York State Police policy.

38.     "Vehicle Contact Action" involves deliberate physical contact with the pursued vehicle for the purpose of terminating a pursuit.

39.     At the time that Trooper Baldner rammed the vehicle for the second time the vehicle posed no risk to Trooper Baldner or any other person on Interstate 87.

40.     Trooper Baldner performed Vehicle Contact Action despite knowing that there were infant children in Tristin Goods' vehicle and having stopped Tristin Goods for an alleged traffic violation.

41.     Upon information and belief, Trooper Baldner openly and flagrantly violated New York State Police policy by failing to obtain approval from his supervisor before initiating Vehicle Contact Action in the absence of extraordinary or life-threatening circumstances.

42.     When Trooper Baldner used his vehicle to ram the vehicle operated by Tristin Goods, Trooper Baldner was performing a maneuver disapproved and forbidden by the New York State Police.

43.     Upon information and belief the ramming maneuver performed by Trooper Baldner is forbidden by New York State Police policy under the circumstances in which Trooper Baldner employed it and is generally not approved for use by the New York State Police.

44.     When Trooper Baldner rammed the Goods' vehicle for the second time, he knew that the maneuver he performed was unsafe at high speeds.

45.     When Trooper Baldner rammed the Goods' vehicle for the second time as part of the unlawful maneuver, he knew that attempting that ramming technique at high speed violated New York State Police policy.

46.     Given the speed of the vehicles, Trooper Baldner knew, or should have known, that causing his vehicle to strike the Goods' vehicle in that manner would cause the vehicle to overturn and cause serious injuries and/or death to the occupants, including the infant decedent M.G. and infant plaintiff, T.G.

47.     When Trooper Baldner used his vehicle to ram the Goods' vehicle, he knew that operating an emergency vehicle neither relieved him from the duty to drive with due regard for the safety of all persons nor permitted him to act with reckless disregard for the safety of others, and his actions did, in fact, constitute such reckless disregard.

48.     As a result of Trooper Baldner ramming the vehicle operated by Tristin Goods, Goods' vehicle left the northbound lanes of Interstate 87, flipped over the median, and overturned before coming to rest on its roof on the southbound side of the highway.

49.     The infant decedent, M.G., was ejected from the vehicle as a result of the collision. The overturned vehicle landed upon infant decedent M.G., crushing her body and ultimately killing her.

50.     M.G. died at the scene.

51.     The infant Plaintiff, T.G., was aware at the scene that M.G. had been killed as a result of the collision.

52.     As a result of the collision caused by Trooper Baldner, the infant plaintiff, T.G. suffered serious permanent and traumatic physical injuries and emotional injuries.

53.     The infant plaintiff, T.G. was segregated from her family and not allowed to speak to her father or her mother for hours.

54.     Upon information and belief, Trooper Baldner violated New York State Police policy by initiating vehicle contact action (to wit: intentionally causing his vehicle to strike Plaintiffs' vehicle) without obtaining approval from his supervisor.

55.     Upon information and belief, before intentionally ramming Plaintiffs' vehicle, Trooper Baldner failed to consider less dangerous alternatives.

56.     It was foreseeable, and likely, that Plaintiffs and their family would sustain significant damages and devastating emotional distress as a result of Trooper Baldner's reckless and wanton conduct.

57.     The New York State Police, by its agents and employees, was aware prior to December 22, 2020, that Trooper Baldner had a propensity to act recklessly and wantonly during vehicular pursuits.

*Prior Incident #1: January 2017*

58.     Upon information and belief, on or about January 19, 2017, Trooper Baldner engaged in a vehicular pursuit with a then-49-year-old motorist on the New York State Thruway.

59.     On that occasion, Trooper Baldner wantonly and recklessly used his New York State Police cruiser to ram the motorist's vehicle, performing the PIT maneuver and disregarding the risk of physical injury to the motorist.

60.     Upon information and belief, the motorist subsequently made a written complaint to the New York State Police regarding Trooper Baldner's reckless and wanton conduct.

61.     The motorist's complaint fell upon deaf ears, although the New York State Police

was aware of the complaint and the factual allegations set forth therein, upon information and

belief, Trooper Baldner was not disciplined.

*Prior Incident #2: September 2019*

62.     Upon information and belief, on or about September 6, 2019, at about 7:45 a.m.,

Trooper Baldner engaged in a vehicular pursuit on the New York State Thruway with a 2018

Dodge Caravan driven by a then-26-year-old motorist.

63.     On that occasion, Trooper Baldner wantonly and recklessly used his New York

State Police cruiser to ram the Dodge Caravan, performing the maneuver and disregarding the

risk of physical injury to the vehicle's driver and passengers.

64.     Upon information and belief, Trooper Baldner knew, or should have known, that

the vehicle he rammed contained two young adult passengers (ages 19 and 21 years of age).

65.     Upon information and belief, the Caravan was traveling at a high rate of speed

when Trooper Baldner rammed its rear.

66.     Upon information and belief, Trooper Baldner knew, or should have known, that

ramming the Caravan in such manner, and under such circumstances, would cause the Caravan's

driver to lose control of the vehicle.

67.     Upon information and belief, Trooper Baldner's actions in ramming the Caravan

caused it to spin into the median and crash against a guardrail, thereby causing a grave risk of

death to the Caravan driver and its passengers.

68.     Nonetheless, upon information and belief, the New York State Police failed to

terminate, discipline, supervise, or otherwise act to address the known risk that Trooper Baldner

posed to the public generally and, in particular, motorists using the New York State Thruway,

thereby emboldening Trooper Baldner to continue to operate his vehicle in an obviously reckless and unlawful manner.

69.     Trooper Baldner posed a grave risk because of his propensity to act recklessly and wantonly during vehicular chases, and his continuing to work as a New York State Trooper amounted to deliberate indifference to the rights of those individuals with whom Trooper Baldner came into contact, including the infant decedent M.G. and infant Plaintiff, T.G.

## FIRST CAUSE OF ACTION
*Excessive Force – Federal & State Law*

70.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "70" of this Complaint as if they were set forth fully herein.

71.     Plaintiffs had the right, pursuant to the Constitutions of the United States of America and New York State, to be free of unreasonable seizures by State agents such as Trooper Baldner.

72.     Trooper Baldner's conduct in intentionally causing his vehicle to strike the Goods' vehicle in a manner that he knew, or should have known, would cause the vehicle to overturn, constituted a seizure.

73.     The force employed by Trooper Baldner to seize Tristin Goods, and as a result, the infant Plaintiffs, was unwarranted, excessive, and unreasonable under the circumstances then and there existing.

74.     Trooper Baldner did not reasonably believe the force used to seize Tristin Goods, and as a result, the infant Plaintiffs, was necessary under the circumstances.

75.     As a result of the unreasonable seizure of the vehicle and the infant Plaintiffs by Trooper Baldner, Plaintiffs were caused to suffer permanent and serious injuries traumatic injuries and damages.

76.    The injuries caused to decedent, M.G. and the infant plaintiff, T.G. as aforesaid, were the result of the wanton, cruel, careless and reckless conduct of defendant and evinced a depraved disregard for the plaintiffs and the plaintiffs' rights. As a result of the negligent actions of defendant, the decedent M.G. and infant plaintiff T.G. were caused to experience fear, fright, shock, bodily injury, and conscious pain and suffering.

77.    As a result of the foregoing, the infant Plaintiffs, M.G. and T.G. were caused to be subjected to the deprivation of rights, privileges, and/or immunities secured by the Constitution and laws of the United States of America and State of New York, and have been damaged thereby, all in violation of 42 U.S.C. § 1983 and the laws of the State of New York.

## SECOND CAUSE OF ACTION
*Substantive Due Process – Federal & State Law*

78.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "78" of this Complaint as if they were set forth fully herein.

79.    Plaintiffs have the right, pursuant to the Constitutions of the United States of America and New York State, to be free of governmental action which is arbitrary, abusive, or shocking to the conscience.

80.    Trooper Baldner's conduct in intentionally causing his vehicle to strike the Goods' vehicle in a manner that he knew, or should have known, would cause the vehicle to overturn constituted an abuse of governmental power.

81.    The aforementioned conduct by Trooper Baldner was committed with the intent to harm Plaintiffs and their family physically.

82.    The aforementioned conduct by Trooper Baldner was committed with the intent to terrorize Plaintiffs and their family.

83.     The aforementioned conduct by Trooper Baldner was reckless and performed with deliberate indifference to a substantial risk of serious injury.

84.     The aforementioned conduct by Trooper Baldner was shocking to the conscience.

85.     When Trooper Baldner rammed the Goods' vehicle, Trooper Baldner was not confronted with the need for quick action.

86.     As a result of Trooper Baldner's intentional, reckless and/or conscience-shocking conduct, Plaintiffs were both caused to sustain serious and permanent traumatic physical injury and emotional injury and the infant decedent M.G. was killed.

87.     Trooper Baldner's conduct caused the infant Plaintiff, T.G. to be deprived of her rights to substantive due process as guaranteed by the United States and New York State Constitutions and the infant decedent M.G. to be deprived of her rights to substantive due process as guaranteed by the United States and New York State Constitutions and her life.

88.     As a result of the foregoing, Plaintiffs were caused to be subjected to the deprivation of rights, privileges, and/or immunities secured by the Constitution and laws of the United States of America and State of New York, and have been damaged thereby, all in violation of 42 U.S.C. § 1983 and the laws of the State of New York.

### THIRD CAUSE OF ACTION
*Procedural Due Process – Federal & State Law*

89.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "89" of this Complaint as if they were set forth fully herein.

90.     The aforesaid acts of Trooper Baldner violated Plaintiffs' right not to be deprived of life, liberty or property without procedural due process.

91.     As a result of the foregoing, Plaintiffs were caused to be subjected to the deprivation of rights, privileges, and/or immunities secured by the Constitution and laws of the

United States of America and State of New York, and has been damaged thereby, all in violation of 42 U.S.C. § 1983 and the laws of the State of New York.

## FOURTH CAUSE OF ACTION
*Fourth Amendment – Federal Law*

92.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "92" of this Complaint as if they were set forth fully herein.

93.     Plaintiffs had the right, pursuant to the Fourth Amendment to the U.S. Constitution to be free of unreasonable seizures.

94.     Trooper Baldner's conduct in intentionally causing his vehicle to strike the Goods' vehicle in a manner that he knew, or should have known, would cause it to overturn, and thereby terminate Plaintiffs' freedom of movement, constituted an unreasonable seizure.

95.     Trooper Baldner's conduct in ramming the Goods' vehicle was intended to terminate Plaintiffs' freedom of movement and effect a seizure of their persons.

96.     As a result of the foregoing, Plaintiffs were caused to be subjected to the deprivation of rights, privileges, and/or immunities secured by the Constitution and laws of the United States of America and State of New York, and have been damaged thereby, all in violation of 42 U.S.C. § 1983 and the laws of the State of New York.

## FIFTH CAUSE OF ACTION
*Intentional Infliction of Emotional Distress – State Law*

97.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "97" of this Complaint as if they were set forth fully herein.

98.     The aforesaid conduct by Trooper Baldner was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and was atrocious and utterly intolerable in a civilized community.

99.     Trooper Baldner acted with the intent to cause, or reckless disregard of the probability of causing, severe emotional distress to Plaintiffs.

100.    Trooper Baldner's conduct caused Plaintiffs to suffer physical injury and severe emotional distress and the death of the infant decedent M.G.

101.    Due to Trooper Baldner's extreme and outrageous conduct, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
*Negligent Infliction of Emotional Distress – State Law*

102.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "102" of this Complaint as if they were set forth fully herein.

103.    Trooper Baldner's conduct created an unreasonable risk of causing physical harm to Plaintiffs as a result of Trooper Baldner negligently initiating a high-speed pursuit.

104.    As a result of Trooper Baldner's negligence, the infant Plaintiff, T.G. suffered emotional injury from witnessing the death of her 11-year-old sister, M.G.

105.    Due to Trooper Baldner's negligent, reckless, and wanton conduct, Plaintiffs has been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
*Gross Negligence / Reckless Disregard – State Law*

106.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "106" of this Complaint as if they were set forth fully herein.

107.    At all times relevant herein, Trooper Baldner had a duty to exercise due care for the safety of others.

108.     By intentionally causing his New York State Police cruiser to strike the Goods'
vehicle at a high rate of speed and in a manner that Trooper Baldner knew, or should have
known, would cause the vehicle to overturn, Trooper Baldner acted recklessly, wantonly, and in
disregard of a known and/or obvious risk that was so great as to make it highly probable that
harm would follow, and with conscious indifference to the outcome.

109.     In acting with such reckless disregard for the safety of others, Trooper Baldner's
conduct constituted gross negligence.

110.     Due to Trooper Baldner's reckless, and wanton conduct, Plaintiffs have been
damaged in an amount to be determined at trial and are likewise entitled to punitive and
exemplary damages.

## EIGHTH CAUSE OF ACTION
*Assault – State Law*

111.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs
"1" through "111" of this Complaint as if they were set forth fully herein.

112.     After the Goods' vehicle had stopped on the side of the Thruway in response to
Trooper Baldner's flashing lights, Trooper Baldner displayed an aggressive demeanor, berating
Tristin Goods in front of Plaintiffs raising his voice, and using profane language.

113.     Trooper Baldner deployed pepper spray or similar chemical agent into the cabin
of the vehicle occupied by Tristin Goods, April Goods, and the Plaintiffs.

114.     When Tristin Goods attempted to drive away to protect the Plaintiffs from
Trooper Baldner's aggression, Trooper Baldner pursued and intentionally rammed the Goods'
vehicle twice.

115.     As Trooper Baldner closed the distance between the vehicles and prepared to ram
the Goods' vehicle, before each impact, Trooper Baldner intentionally caused Plaintiffs to

believe that a harmful bodily contact was about to occur by causing his New York State Police cruiser to bear down upon the Goods' vehicle at high speed.

116.    Before each impact, Trooper Baldner had the real and apparent ability to carry out the threatened contact.

117.    Plaintiffs were placed in fear of the threatened and impending harmful contact as a result of Trooper Baldner's conduct.

118.    Due to Trooper Baldner's intentional conduct, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## NINTH CAUSE OF ACTION
*Battery – State Law*

119.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "119" of this Complaint as if they were set forth fully herein.

120.    Trooper Baldner caused his New York State Police vehicle to strike the Goods' vehicle with the intent to cause bodily harm to Plaintiff and her family.

121.    As a result of Trooper Baldner's ramming the Goods' vehicle, Plaintiffs each suffered an offensive bodily contact and physical injury.

122.    Due to Trooper Baldner's intentional conduct, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## TENTH CAUSE OF ACTION
*Negligence – state law*

123.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "123" of this Complaint as if they were set forth fully herein.

124.    At all times herein mentioned Trooper Baldner was operating his New York State Police Cruiser in a northbound direction on Interstate 87.

125.    The infant plaintiff's M.G. and T.G. were passengers in the Goods' vehicle traveling in a northbound direction on Interstate 87.

126.    In causing his vehicle to collide with the Goods' vehicle Trooper Baldner operated his vehicle in a careless and reckless manner, failed to keep a proper look-out in the direction that his automobile was traveling; failed to avoid coming into contact with the Goods' vehicle and failed to take the necessary precautions to insure the safety of the occupants of the Goods' Vehicle.

127.    That the collision and the injuries resulting to the infant plaintiff T.G. and infant decedent M.G. were caused solely by reason of the negligence of Trooper Baldner.

128.    As a result of the negligence of Trooper Baldner, the infant decedent sustained severe and permanent and fatal injuries and was caused and continued before her death to be sick, sore, lame disabled and suffered serious injury in and about her head body, and limbs. During that period M.G. suffered great pain and mental anguish and fear of impending death.

129.    As a result of the negligence of Trooper Baldner the infant plaintiff T.G. sustinaed sever and permanent injuries to her head, body and limbs which rendered her sick, sore, lame and disabled; that the infant plaintiff T.J.'s was injured both internally and externally and all of the said injuries were attended with great pain, suffering and discomfort; that many of the infant plaintiff's injuries are reasonably certain to be permanent in nature; that medical care and treatment were required in an effort to cure the infant plaintiff of the aforesaid injuries; that the infant plaintiff will require ongoing care in an effort to cure herself; and that the infant plaintiff T.G. was in the zone of danger of bodily harm and was contemporaneously aware of the death of her sister, M.G., as a result of the defendant's action.

130.    The infant decedent M.G. and the infant plaintiff T.G. have complied with the New York State Insurance Law, Comprehensive Motor Vehicle Insurance Reparations Act, in that he received a serious injury pursuant to the definition of said injuries as set forth and defined in that act.

### ELEVENTH CAUSE OF ACTION
*Wrongful Death – state law*

131.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "131" of this Complaint as if they were set forth fully herein.

132.    As a direct and proximate result of the conduct and actions of Trooper Baldner infant decedent M.G. sustained serious bodily injuries resulting in pain, suffering, disability, fear of impending death, and wrongful death, entitling her estate to recover general and special compensatory damages (including but not limited to medical and hospital expenses, funeral expenses, and all other damages allowable for wrongful death and survival benefits under RCW Title 4.20 and RCW Title 4.24 and any other damages allowable as a result of Defendants' tortuous conduct;) in amounts not now precisely known, the exact amounts to be proven at or before the time of trial.

133.    Prior to the collision caused by the conduct of Trooper Baldner the infant decedent M.G. was in excellent health.

134.    The infant decedent M.G. is survived by her mother Michelle Surrency, sister T.G., and father Tristin Goods, who by virtue of the conduct of the Trooper Baldner are deprived of the financial support, companionship, comfort, support and guidance of M.G.

135.    As a further direct and proximate result of the negligent acts and omissions and conduct of Trooper Baldner, the survivors of the infant decedent M.G. suffered destruction of the parent-child relationship and loss of parental consortium.

## TWELFTH CAUSE OF ACTION
*Parental derivative claim – state law*

136.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "136" of this Complaint as if they were set forth fully herein.

137.    At all times mentioned, the plaintiff, Michelle Surrency, was, and continues to be, the parent and natural guardian of the infant T.G., and was the parent and natural guardian of the infant decedent M.G. and they resided, and continue to reside together in Kings County, State of New York.

138.    Prior to the motor vehicle collision caused by the conduct of Trooper Baldner the plaintiff's daughter, the infant plaintiff T.G., was healthy and sound, and was able to, and did, in fact, provide the plaintiff with all the services, consortium, love, aid, and affection, and was, and did, in fact, engage in all activities typical of a parent and child relationship.

139.    At the time of the collision caused by the conduct of Trooper Baldner, as hereinbefore set forth, and, in consequence of the negligence acts and omissions of Trooper Baldner the infant plaintiff T.G. was injured, bruised, and wounded, and became sick, sore, lame, and disabled.

140.    As a result of Trooper Baldner's negligence, the plaintiff, Michelle Surrency, has been deprived of her daughter's services; deprived of the consortium, love, aid, and affection of her daughter; deprived of her daughter's comfort and happiness; that the plaintiff's companionship has been impaired; and that the plaintiff believes that the hereinbefore described deprivation, and impairment, will continue in the future.

## DEMAND FOR RELIEF

WHEREFORE, plaintiffs demands judgment against defendants as follows:

a.   An award of compensatory damages on behalf of each plaintiff and on each cause of action in an amount to be determined by the trier of fact;

b.   An award of attorney's fees, costs, disbursements and expert fees on behalf of each plaintiff pursuant to 42 U.S.C. § 1983;

c.   An award of punitive and exemplary damages on behalf of each plaintiff in an amount which a jury shall determine is appropriate to deter future similar conduct; and

d.   An award of such other, further and distinct relief as the Court deems just and proper.

Dated: April 5, 2022

Respectfully submitted,

**DELORENZO, GRASSO & DALMATA, LLP**
*Attorneys for Plaintiffs*

By: _____
   Cory Ross Dalmata, Esq.
670 Franklin Street, Suite 100
Schenectady, New York 12305
(518) 374-8494
CRD@Delolaw.com

**RUBENSTEIN & RYNECKI**
*Attorneys for Plaintiffs*

By: _____
   Sanford Rubenstein, Esq.
16 Court Street
Brooklyn, New York 11241
(718) 522-1020

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK   )

                             ) SS:

COUNTY OF KINGS        )

         MICHELLE SURRENCY, being duly sworn, deposes and says, that deponent is the Administrator of the Goods, Chattels and Credits of M.G., deceased infant and Parent and Natural Guardian, T.G., an infant, in the within action; that deponent has read the foregoing **COMPLAINT** and knows the contents hereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes them to be true.

 

                                                  MICHELLE SURRENCY

Sworn to before me this 20th day of April  2022

NOTARY PUBLIC

SHARON S. KHAN
Notary Public, State of New York
No. 01KH6159683
Qualified in Kings County
Commission Expires January 22, 2023